UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | 1:08-CR-4 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| ) | |
| FRANCISCO LAKE[1], GEORGE ) | |
| CRAWFORD, NATALYA PUNTO, ) | |
| and JACQUALINE BANKS ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

Before the Court is the joint motion filed by Defendants Natalya Punto ("Punto") and Jacqualine Banks ("Banks) to suppress evidence obtained from the stop and search of a motor vehicle (Court File No. 35). The United States ("Government") filed a timely response (Court File No. 38) and the motion was referred to U.S. Magistrate Judge Susan K. Lee (Court File No. 37), who held a hearing and subsequently filed a report & recommendation ("R&R") recommending Defendants' motion be denied (Court File No. 75). Defendant Banks filed an objection (Court File No. 76), as did Defendant Punto (Court File No. 79), and the Government responded (Court File No. 82). For the following reasons, the Court will **ACCEPT** and **ADOPT** the R&R (Court File No. 75). Accordingly, Defendants' motion to suppress will be **DENIED** (Court File No. 35).

**I.     RELEVANT FACTS**

None of the parties challenges the magistrate judge's account of the testimony and evidence

---

[1]Defendant Francisco Lake ("Lake") originally joined the motion to suppress, but withdrew his participation (Court File No. 59).

presented at the hearing, which the Court hereby adopts by reference (Court File No. 75 at 2-19). The Court will only set forth the facts necessary to this Memorandum. On November 15, 2007, Officer Robert Lewis ("Officer Lewis") witnessed two vehicles, which appeared to be traveling together, speeding on I-24 (Court File No. 69 at 9). He observed the rear vehicle, a Lincoln Navigator, was following the other vehicle, a Jeep Cherokee, too closely and his computer reported the tag of the Navigator was expired (Court File No. 69 at 9). Around 12:55 a.m., Officer Lewis contacted Officer Thomas Raulston ("Officer Raulston") for assistance in pulling over both vehicles (Court File No. 69 at 10).

Officer Raulston testified he checked the Navigator for speeding and noticed the tag was obscured before he pulled over the Navigator (Court File No. 69 at 77). The driver of the Navigator, Punto, was very cooperative, but Lake, who was a passenger, was argumentative and appeared to be extremely nervous (Court File No. 69 at 78). Officer Raulston never mentioned the speeding to the Navigator's occupants because Lake aggressively disputed the registration violation (Court File No. 69 at 96). At some point during the stop, Officer Raulston's computer indicated the registration was expired (Court File No. 69 at 145). Although Officer Raulston requested a records check of Punto's license soon after stopping the Navigator, he testified his computer was running slow that night and he did not receive the information confirming Punto's license until later in the stop (Court File No. 69 at 98-99).

As proof the registration was valid, Punto gave Officer Raulston the warning ticket from a previous traffic stop in Catoosa County, Georgia, and Lake lifted the decorative tag bracket to show Officer Raulston the current registration sticker (Court File No. 69 at 78-79). Since Officer Raulston had not yet received information on Punto's license, he asked for Lake's license to do a records

2

check (Court File No. 69 at 110). At some point, Officer Raulston also told Lake he might have to drive if Punto's license was invalid (Court File No. 69 at 111).

Officer Lewis, who had stopped the Jeep, called Officer Raulston to tell him the Jeep was a rental vehicle and the occupants of the Jeep claimed the renter was in the Navigator (Court File No. 69 at 79). Officer Lewis also informed Officer Raulston the Jeep occupants said they were going to Memphis and were traveling with the Navigator. Officer Raulston had not requested identification from Banks, a passenger in the back of the Navigator, because he had assumed she was a juvenile (Court File No. 69 at 107). Although he told Officer Lewis the renter might be the juvenile, later in the stop, Officer Raulston realized Banks was an adult and not the renter of the Jeep. During the call, Officer Raulston noted Lake's extreme nervousness made him suspicious of criminal activity and he intended to do a records check on Lake though the Blue Lightning Operations Center (BLOC). Officer Lewis told Officer Raulston to "cut them loose" if everything checked out, but the Jeep was "screwed up." The officers also discussed the Jeep's past-due rental and violation of the rental agreement's restriction to Georgia.

In response to questioning, Lake informed Officer Raulston the Jeep and the Navigator were "not now" traveling together. Officer Raulston learned the occupants of the Navigator were going to Nashville to party and he asked Lake about the conflicts between what he said and what the Jeep occupants had told Officer Lewis (Court File No. 69 at 116). Lake admitted knowing the occupants of the Jeep. However, when Officer Raulston questioned Punto and Banks, they denied knowing the occupants of the Jeep (Court File No. 69 at 80). Later, apparently after Officer Raulston received information from BLOC about Lake and Punto, Banks admitted she lied because she was having a relationship with a married man whose wife was also in the Jeep (Court File No. 69 at 80).

3

Officer Raulston asked Lake for permission to search the vehicle, which Lake refused (Court File No. 69 at 84). He also asked Lake if there were drugs or contraband in the vehicle (Court File No. 69 at 115). Officer Raulston performed a safety pat-down of Lake and felt a bulge in his pocket, which Lake said was $2500. Officer Raulston spoke with Officer Lewis again and concluded the Navigator's occupants gave a different story about traveling to Nashville than the Jeep's occupants. Officer Lewis had requested a canine unit for the Jeep and Officer Raulston asked him to send it over to the Navigator because he was suspicious of criminal activity. He testified his suspicions were based on Lake's extreme nervousness, "standoffishness," and pacing; the conflicting stories among the occupants of the vehicles; the fact two of the occupants were from different parts of Georgia while one was from New York; and the conflicting stories on whether the occupants of the Navigator knew the occupants of the Jeep (Court File No. 69 at 117-118). Officer Raulston began writing a citation for the registration violation, but did not give the warning to Punto until after the canine unit arrived (Court File No. 69 at 120).

At about 1:30 a.m., BLOC returned Officer Raulston's call and informed him Lake had an extensive criminal history of drug smuggling and credit card fraud and his person and surrounding should be searched if possible (Court File No. 69 at 120-121). The canine unit arrived and, after a sweep of the vehicle, the dog indicated on the Navigator (Court File No. 69 at 171). Officer Raulston and other police officers searched the Navigator and found a black bag containing several hundred credit cards with matching IDs, two laptop computers, a credit card machine, and a printer (Court File No. 69 at 86-87). This evidence is the subject of the joint motion to suppress.

## II. STANDARD OF REVIEW

4

This Court must conduct a *de novo* review of those portions of the report and recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C). The Court has "broad discretion" in conducting a *de novo* determination and is not required to rehear any contested testimony. *United States v. Raddatz*, 447 U.S. 667, 674, 681 (1980). "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on the magistrate's proposed findings and recommendations." *Id.* at 676.

### III. DISCUSSION

Defendants Punto and Banks raised several objections to the magistrate judge's findings and recommendations. For ease and clarity, the Court will address the objections in the order the issues appear in the R&R.

#### A. Punto objects to the magistrate judge's credibility determination.

Punto asserts the officers were not credible witnesses and their testimony should be given little weight (Court File No. 79 at 12). Punto cites numerous examples to support her assertion, including Officer Raulston's failure to mention the speeding violation to the Navigator's occupants, evidence indicating the results on information for Punto's license were sent soon after it was requested, although Officer Raulston testified he did not receive it until later in the stop, and Officer Lewis asking for consent to search after the canine alert. However, based on a thorough review of the record, the Court sees no reason to doubt the credibility of the police officers as determined by the magistrate judge. Certainly in an ideal situation, Officer Lewis would not have turned off the audio on his video and neither officer would have blocked the camera by lining up the vehicles'

5

occupants in front of the police car. However, Officer Lewis's conduct is not directly at issue in this case, and Officer Raulston's explanation of why he told the Navigator's occupants to stand in front of the police car was reasonable under the circumstances. The Court concludes the magistrate judge's finding of credibility is supported by substantial evidence.

**B.    Punto objects to the finding of probable cause for stop.**

Although Punto asserts no legal basis existed for the stop at its inception, "so long as the officer has probable cause to believe a traffic violation has occurred or was occurring, the resulting stop is not unlawful . . . . and it is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993). Probable cause is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). Since Officer Raulston testified he noticed the Navigator's tag was partially covered and he clocked the Navigator speeding at 62 mph in a 55 mph zone, he had probable cause to believe Tennessee traffic laws were being violated. An officer's subjective motives are irrelevant in determining whether a traffic stop is reasonable under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 813 (1996). Thus, whether the traffic violation was mere pretext is immaterial.

Both officers consistently testified the Navigator and the Jeep were speeding. However, Punto argues since Officer Raulston did not mention the speeding to the occupants of the Navigator and did not issue a citation for it, the speeding cannot be a basis for the detention. The United States Court of Appeals for the Sixth Circuit has held "continuing to detain a motorist does not become unlawful just because the officer has determined in his own mind not to pursue the traffic violation." *United States v. Herbin*, 343 F.3d 807, 810 (6th Cir. 2003) (citing *Ohio v. Robinette*, 519 U.S. 33,

6

38 (1996)). Thus, the failure to mention the speeding violation to Defendants or issue a citation is legally irrelevant. Furthermore, obscuring the registration sticker was reason enough to justify the stop.

    **C.    Banks and Punto object to the finding the scope and length of the detention were reasonable.**

While the police may stop a vehicle for any traffic infraction, detention beyond the scope of the initial stop requires reasonable suspicion of criminal activity. "[S]ome activity must occur during the initial stop which raises reasonable suspicion in order to justify further detention that is unrelated to the initial traffic stop." *United States v. Bradshaw*, 102 F.3d 204, 212 (6th Cir. 1996). The Court must decide "whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion." *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993). The Court then determines whether the degree of intrusion was "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 20 (1968). The detention is reasonable if it is "sufficiently limited in time" and "the investigative means used [were] the least intrusive means reasonably available." *Bennett v. City of Eastpointe*, 410 F.3d 810, 825-26 (6th Cir. 2005).

The magistrate judge analyzed the detention beginning around 1:15 a.m., at which time Officer Raulston could have completed the stop if he had chosen to rely on the Catoosa warning, the registration sticker, and the registration paperwork (Court File No. 75 at 28). This Court will also assume without deciding the scope of the initial stop ended at 1:15 a.m. For continued detention to be lawful, Officer Raulston must have had reasonable suspicion of criminal activity at that time. While Punto objects to the detention generally (Court File No. 79 at 2-10), Banks objects to the

7

R&R finding Officer Raulston had sufficient cause to continue to detain the vehicle after 1:15 a.m. (Court File No. 76 at 1).

To detain the occupants of the vehicle once the purpose of the initial traffic stop is completed, the officer must have reasonable suspicion criminal activity is afoot. *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). Reasonable suspicion is a less exacting standard than probable cause, but there must be "at least a minimal level of objective justification for the stop." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). "Reasonable suspicion requires specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the continued detention of a motorist after a traffic stop." *United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). Since reasonable suspicion is fact sensitive, "one determination will seldom be useful 'precedent' for another." *Illinois v. Gates*, 462 U.S. 213, 238 n.11 (1983).

Punto and Banks argue Officer Raulston based the continued detention on a "hunch" or a bad feeling rather than specific facts. "[S]pecificity in the information upon which police action is predicated is the central teaching of [the Supreme] Court's Fourth Amendment jurisprudence" and factors may not be "too vague and nonspecific to support a reasonable suspicion." *United States v. Urrieta*, 520 F.3d 569, 579 (6th Cir. 2008) (quoting *Terry*, 392 U.S. at 21 n.18). Detention may not be based on an "inchoate and unparticularized suspicion or 'hunch.'" *Terry*, 392 U.S. at 27. However, Officer Raulston articulated several distinct facts that increased his suspicion of criminal activity during the detention. While some of these factors are given little weight in the overall analysis, they are probative to the determination of reasonable suspicion.

The government points to several observations that led Officer Raulston to reasonably

8

suspect criminal activity (Court File No. 67, pp 7-8). First, the drivers and passengers of the two vehicles gave conflicting answers about whether the Jeep and the Navigator were traveling together. Second, Officer Raulston was aware Officer Lewis had discovered the Jeep was a rental vehicle that was out of territory and overdue and the Jeep's occupants claimed the renter was in the Navigator. Third, the occupants were extremely nervous.[2] Fourth, Banks changed her story about whether she knew any of the Jeep's occupants. Officer Raulston, in his testimony, identified several factors that made him suspicious of criminal activity, including Lake's "standoffishness" and extreme nervousness, the fact the occupants of the Navigator came from different parts of the country, the conflicting stories among the occupants of the Navigator, and the conflicting destinations between the occupants of the Jeep and the occupants of the Navigator.

Punto and Banks attack the factors individually, asserting each one has an innocent explanation. However, this ignores the essence of reasonable suspicion analysis, which is to interpret the situation based on the totality of the circumstances. "[T]he basis for reasonable suspicion must be viewed under the totality of the circumstances, as understood by those in the field of law enforcement." *Smith*, 263 F.3d at 589. Totality of the circumstances analysis requires a determination of "whether the individual factors, taken as a whole, give rise to reasonable suspicion even if each individual factor is entirely consistent with innocent behavior when examined separately." *Smith*, 263 F.3d at 588 (citing *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)), *United States v. Perez*, 440 F.3d 363, 371 (6th Cir. 2006). Thus, while each individual factor may be innocent, the situation as a whole must distinguish the vehicle's occupants from the general

---

[2]Although the government includes "[a]ll the occupants" in its brief, Officer Raulston only mentioned the extreme nervousness and "standoffishness" of Lake. Thus, the Court will not consider the demeanor of the other occupants.

9

population of travelers in a way that raises suspicion of criminal activity.

Defendants argue Lake's argumentative and standoffish behavior should not be considered a basis for reasonable suspicion. Nervous and evasive behavior is generally insufficient by itself, but is "a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975); *Florida v. Rodriguez*, 469 U.S. 1, 6 (1984); *United States v. Sokolow*, 490 U.S. 1, 8-9 (1989)). However, the Sixth Circuit holds nervousness is "inherently *unsuspicious*" and has "very limited or no weight" in calculating reasonable suspicion. *Urrieta*, 520 F.3d at 577 (citing *United States v. Richardson*, 385 F.3d 625, 630-31 (6th Cir. 2004); *United States v. Andrews*, 600 F.2d 563, 566 (6th Cir. 1979)). While the Court will consider Lake's attitude as part of the totality of the circumstances analysis, his behavior will be accorded minimal significance.

Defendants correctly assert only facts known to Officer Raulston at the time he exceeded the scope of the initial stop, 1:15 a.m., are relevant to determining reasonable suspicion. At that point, Officer Raulston had not received any information from BLOC about Lake's criminal history. In addition, he had not patted down Lake and found the wad of cash. However, Officer Raulston did know the Jeep and the Navigator had been traveling together before they separated shortly before both vehicles were stopped. At around 1:15 a.m., Lake told him the vehicles were "not now" traveling together whereas Officer Lewis had said the Jeep's occupants said the vehicles were traveling together. In addition, Officer Raulston knew Lake stated the Navigator was traveling to Nashville, while Officer Lewis reported conflicting stories from the Jeep's occupants. Officer Raulston knew the Jeep was a rental vehicle that was out of territory and past due. He likely also knew the purported renter was not in the Navigator since he asked Lake about Banks when Lake

10

brought him the registration papers. In addition, Officer Lewis had told Officer Raulston he was highly suspicious of the Jeep.

Reasonable suspicion must be determined by "commonsense judgments and inferences about human behavior." *Illinois*, 528 U.S. at 125. A court should give "due weight" to the "specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27. The inconsistent statements between the occupants of the Jeep and the occupants of the Navigator indicated the Navigator's occupants wanted to avoid being linked to the Jeep. In addition, the Jeep's rental agreement and missing renter suggested the possibility it might be stolen. The circumstances known to Officer Raulston at about 1:15 a.m. reasonably aroused the suspicion criminal activity was afoot and he permissibly detained the Navigator to more fully investigate. Accordingly, the Court agrees with the R&R's finding Officer Raulston had reasonable suspicion of criminal activity that justified his detention of the Navigator's occupants beyond the scope of the initial stop.

Even though Officer Raulston was justified in continuing to detain the Navigator's occupants, the detention itself must be reasonable as well. "Under the Fourth Amendment, even the briefest of detentions is too long if the police lack a reasonable suspicion of specific criminal activity." *Urrieta*, 520 F.3d at 579 (citing *United States v. Townsend*, 305 F.3d 537, 541, 545 (6th Cir. 2002)). Although Officer Raulston had reasonable suspicion at 1:15 a.m., under the Fourth Amendment, he must pursue his investigation diligently and reasonably and any further detention must be based on factors supporting reasonable suspicion.

In determining whether the time of the stop exceeded its original scope, "bright line limitations as to an officer's course and conduct" are inconsistent with the court's task of evaluating

11

the stop under the totality of the circumstances. *United States v. Hill*, 195 F.3d 258, 269-70 (6th Cir. 1999). The Court notes the length of the detention from the initial stop to the canine alert was about 58 minutes, approximately 45 minutes if measured from the time Lake provided the registration paperwork to the canine alert, and close to 15 minutes from the time BLOC returned information about Lake to the canine alert. While these time periods are probative of the degree of intrusion, the reasonableness of the detention is also determined by evidence of the complexity of the situation and the investigatory techniques pursued. Courts must consider the "law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes." *United States v. Sharpe*, 470 U.S. 675, 685 (1984). However, police may not delay a motorist without any investigative purpose. *See United States v. Davis*, 430 F.3d 345, 356 (2005) (holding while police reasonably suspected narcotic activity, the drug-sniffing dog's failure to alert on the vehicle should have dispelled the suspicion, such that delaying the defendant an additional hour in order to permit a second examination of the vehicle violated the Fourth Amendment).

"In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686 (1984). "The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it." *Id.* at 687.

Subsequent to receiving the registration papers from Lake at about 1:15 a.m., Officer Raulston questioned Lake about the conflicting stories and talked to Punto and Banks. Officer Raulston then asked Lake for permission to search the vehicle and again told him about the

12

conflicting stories. Since Officer Raulston had already called BLOC for information on Lake, by questioning the Navigator's occupants, he was diligently pursuing a means of investigation that could quickly dispel his suspicions. Officer Raulston discovered the large amount of money in Lake's pocket and, shortly thereafter, requested the canine unit be sent to the Navigator. While Officer Raulston was preparing the warning citation for the registration violation, BLOC returned his call and informed him of Lake's criminal history as a "drug smuggler" who should be searched. In the time period between the request for the canine unit and the alert, Officer Raulston talked to BLOC about Lake, requested information on Banks, conferred with Officer Lewis and other officers who were at the scene, questioned Banks, and spoke to Punto about the citation. *See United States v. Orsolini*, 300 F.3d 724, 730 (6th Cir. 2002) (35 minutes spent waiting for the canine unit to arrive was not a detention for an unreasonable amount of time).

Officer Raulston had reasonable suspicion to detain the Navigator's occupants and he conducted a diligent investigation designed to quickly confirm or dispel his suspicion. The circumstances were complicated by the fact the police officers were communicating about suspicious behavior occurring in two separate vehicles, such that Officer Raulston not only pursued his own suspicions about the occupants of the Navigator, but also corroborated Officer Lewis's information about the connection between the vehicles. In view of the totality of the circumstances, Officer Raulston's detention of the Navigator's occupants was reasonable.

**D.     Punto objects to the finding of probable cause to search of the vehicle.**

Punto argues the search of the Navigator was unconstitutional because the canine alert should not be a legal basis for probable cause. "It is well-established in this Circuit that an alert by

13

a properly-trained and reliable dog establishes probable cause sufficient to justify a warrantless search of a stopped vehicle." *United States v. Hill*, 195 F.3d 258 (6th Cir. 1984) (citing *United States v. Diaz*, 25 F.3d 392, 394 (6th Cir. 1994)). This Court has thoroughly evaluated and discussed the science and training behind dog sniffs in *United States v. Howard*, 448 F. Supp.2d 889, 896-901 (E.D. Tenn. 2006). When a properly trained dog alerts on a vehicle, probable cause is established for the presence of a controlled substance. *United States v. Diaz*, 25 F.3d 392, 394 (6th Cir. 1994).

As in *Diaz*, Officer Allen, the dog's trainer and handler, gave testimony that supports a finding Copper was trained and reliable. *Id.* at 395. "[T]estimony is sufficient to establish a dog's reliability to support a valid sniff" and training and performance records are unnecessary. *Id.* (citing *United States v. $67,220*, 957 F.2d 280, 285 (6th Cir. 1992)). Officer Allen testified as to Copper's training and reliability. Furthermore, the record does not support a finding of cuing by the handler. Officer Allen adequately explained his actions on the night in question and described the technique he and Copper use to search for narcotics odor.

Punto argues since the dog, Copper, alerted on both the Jeep and the Navigator and no drugs were found in either vehicle, the dog's reliability should be in question. However, the fact drugs were not found in the Navigator does not lead to the conclusion the dog falsely alerted. Compared to humans, dogs possess a heightened sense of smell that allows them to detect scent particles hours or days after an object has been removed. *Howard*, 448 F. Supp.2d at 897. Since the canine alerts to the presence of odors rather than the presence of objects, the absence of drugs in the vehicles does not lead to the conclusion Copper did not detect scent particles. The record supports a finding Copper is a trained and reliable drug detection dog.

The Court finds the canine alert on the Navigator formed a sufficient basis for probable cause

and the subsequent search was not illegal.

**IV. CONCLUSION**

For the foregoing reasons, the Court will **ACCEPT** and **ADOPT** the R&R. Thus, the Defendants' motion to suppress will be **DENIED**.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**